**REID COLLINS & TSAI LLP**
Angela J. Somers
R. Adam Swick
Anne M. Bahr
Yonah Jaffe
One Penn Plaza, 49th Floor
New York, New York 10119
Tel.: (212) 344-5200

*Counsel to Taro Awataguchi,*
*Foreign Representative of Tibanne Co., Ltd.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>TIBANNE CO., LTD., a/k/a K.K. Tibanne,<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 15- _____ |

### VERIFIED PETITION OF FOREIGN REPRESENTATIVE TARO AWATAGUCHI IN SUPPORT OF APPLICATION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING PURSUANT TO 11 U.S.C. § 1517

Petitioner Taro Awataguchi ("**Petitioner**"), as the bankruptcy trustee of Tibanne Co., Ltd., a/k/a K.K. Tibanne ("**Tibanne**") is a foreign representatives, as defined in section 101(24) of title 11 of the United States Code (the "**Bankruptcy Code**"), in a foreign proceeding (the "**Japan Proceeding**"), as defined in Bankruptcy Code section 101(23), that is pending before the Twentieth Civil Division of Tokyo District Court, Japan (the "**Tokyo Court**"). Petitioner submits this Verified Petition (the "**Verified Petition**") pursuant to sections 1515 and 1517 of the Bankruptcy Code seeking recognition of the Japan Proceedings as a foreign main proceeding and related relief. Along with this Verified Petition, Petitioner seeks immediate provisional relief under section 1519 in the form of an Order to Show Cause for Provisional Relief, pending imposition of the stay as provided for in section 1520 of the Bankruptcy Code.

## **PRELIMINARY STATEMENT**

1. Petitioner, as the duly appointed foreign representative of Tibanne, has commenced this Chapter 15 case under section 1504 of the Bankruptcy Code by filing this Verified Petition, accompanied by all certifications, statements, lists, and documents required pursuant to section 1515 of the Bankruptcy Code and Rules 1007(a)(4) and 1008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

2. Petitioner is entitled to petition this Court directly under section 1509 of the Bankruptcy Code for recognition of the Japan Proceeding. Petitioner seeks recognition of the Japan Proceeding in order to stay the Washington Action and the Class Action (defined below). Tibanne does not have the liquidity to pay for its defense or to pursue counterclaims in these actions. At this time, it is also uncertain whether Tibanne will be able to liquidate its limited assets, and the extent of value that will be derived from such liquidation. Thus, even if a judgment were to be rendered, it is uncertain what small part of it could be satisfied.

3. Petitioner cannot efficiently administer the estate if judgments are rendered in these suits. Accordingly, Petitioner seeks to have plaintiffs in the Washington Action and the Class Action file their respective claims in the Japan Proceeding for determination consistent with the claims of Tibanne's other creditors. Petitioner also seeks to facilitate the efficient administration of Tibanne's assets in one proceeding so as to prevent a piecemeal disposition or degradation of assets that would undermine the Japan Proceeding. This process will promote equal distribution among all creditors.

4. Petitioner satisfies the requirements for recognition of the Japan Proceeding as a foreign main proceeding, as defined in section 1502(4) of the Bankruptcy Code, because the center of main interest—or "COMI"—of Tibanne is clearly in Japan. Further, Tibanne has assets

2

in the United States, and thus, to the extent section 109 of the Bankruptcy Code is applicable, Tibanne meets those requirements. Petitioner has also met the requirements of Sections 1515 and 1517 of the Bankruptcy Code. Moreover, recognition of the Japan Proceeding as a foreign main proceeding is not contrary to the public policy of the United States. Rather, recognition would further the goals of Chapter 15 by ensuring that the Tokyo Court continues to be the forum supervising Tibanne's liquidation so as to enhance claim and asset recovery.

5. Recognition of the Japan Proceeding is necessary to administer, and realize the value Tibanne's assets for the benefit of all creditors and investors. Accordingly, Petitioner respectfully request that the Court (i) recognize the Japan Proceeding as a foreign main proceeding, and (ii) grant the provisional relief requested in the Application filed with this Verified Petition.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and section 1501 of the Bankruptcy Code, and the Amended Standing Order of Reference (Preska, C.J.) dated January 31, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(P). Venue is proper pursuant to 28 U.S.C. § 1410. The statutory predicates for the relief requested herein are sections 108, 1504, 1507, 1509, 1515, 1516, 1517, 1520, and 1521 of the Bankruptcy Code and Bankruptcy Rule 1007.

## BACKGROUND

7. The Court is respectfully referred to the accompanying Declaration of Taro Awataguchi (the "**Awataguchi Declaration**"), which sets forth the relevant facts in greater detail. The information in this Verified Petition and the accompanying declaration are based upon the information that is presently available to Petitioner. This includes Petitioner's

3

(i) personal knowledge, (ii) review of Tibanne's books and records, (iii) review of the MtGox bankruptcy filings in Japan and the United States, (iv) review of the pleadings in the Washington Action and Class Action, (v) communications and dealings with Tibanne's former director, and (vi) other work performed to date.

A.    **Tibanne's Corporate Status and Structure**

8.    Tibanne was established in October 29, 2009 as a corporation organized under Japanese Law. A copy of Tibanne's Certificate of Company Registration is annexed to the Awataguchi Declaration as Exhibit B. Tibanne has always had its registered office in Tokyo, Japan. Awataguchi Declaration, ¶ 10. From October 29, 2009 to June 24, 2012, its registered office was located at Cerulean Tower 15F, 26-1 Sakuragaoko-cho, Shibuya-ku, Tokyo, Japan. From June 25, 2012 to September 1, 2013, its registered office was located at Round-Cross 5F, 2-11-6 Shibuya, Shibuya-ku, Tokyo, Japan. From September 1, 2013 to January 16, 2015, Tibanne's registered office was located at 2-11-5 Shibuya, Shibuya-Ku, Tokyo, Japan. For most of its existence, Tibanne's registered office was also its principal place of business where it maintained its books and records and conducted its business. However, from January 16, 2015 to the time Mr. Awataguchi was appointed as bankruptcy trustee, Tibanne's principal place of business was the home of Mark Karpeles, in Tokyo, Japan because Tibanne was unable to pay the rent on its former offices. In its documents, and communications to customers, investors, and creditors, Tibanne has consistently represented that it is a Japanese corporation subject to Japanese law.

9.    Tibanne is solely owned by Mark Marie Robert Karpeles who resides in Japan. *Id.*, ¶¶ 10, 11. Tibanne is the parent corporation of Mt.Gox Co., Ltd. a/k/a K.K. MtGox ("**MtGox**"). Tibanne holds an 88% equity interest in MtGox, with the other 12% held by Jed

4

McCaleb, the developer of the initial MtGox software. In turn, MtGox is the parent corporation for and holds 100% of the equity interest in Mt. Gox North America Inc. ("**MtGox North America**"), a New York corporation. Moreover, MtGox North America is the parent corporation for and holds 100% of the equity interest in MtGox Inc. ("**MtGox Inc.**"), a Delaware corporation.

10.     Tibanne specialized in web hosting, application development, and system management. *Id.*, ¶ 12. Currently, Tibanne still engages in web hosting, but it is winding down that business. As a web host, Tibanne enabled individuals and organizations to make their websites accessible via the internet. Specifically, they provided space on their servers and internet connectivity to a variety of businesses. Tibanne offered this web hosting services to numerous companies, including commercial retailers. As a result of Tibanne's web hosting, customers of these commercial retailers could place orders and make purchases twenty-four hours a day, seven days a week via the internet.

11.     In addition, on March 1, 2011, Tibanne purchased the mtgox.com website, domain name rights, software, and customer accounts from Jeb McCaleb.[1] *Id.*, ¶ 13. On August 9, 2011, MtGox was formed as a separate corporation and subsidiary of Tibanne, for the purpose of constructing, developing, and operating information technology systems and internet websites. As of April 1, 2012, MtGox commenced operating the mtgox.com website. The mtgox.com website facilitated the buying and selling of Bitcoins for "fiat" currency, and had customers throughout the world.

---

[1] Jed McCaleb created the mtgox.com website in approximately 2007 for other purposes not related to Bitcoin. Subsequently, he developed the software and website to become a Bitcoin exchange in 2010.

B.    **Events Leading to the Japan Proceeding**

12.    Because of Tibanne's reliance on revenue produced by MtGox, as MtGox encountered problems, it could no longer generate cash flow to be used for Tibanne's operations. On February 28, 2014, MtGox filed a petition for commencement of a civil rehabilitation proceeding in the Tokyo Court pursuant to Article 21(1) of the Japan's Civil Rehabilitation Act). *Id.*, ¶14. On that same day, the Tokyo Court appointed Nobuaki Kobayashi as MtGox's provisional administrator. According to the pleadings filed, on February 7, 2014, MtGox halted all bitcoin withdrawals by its customers after MtGox was subject to what appears to have been a massive theft or disappearance of Bitcoins. As a result, MtGox suspended all trading of Bitcoins on or about February 24, 2014. MtGox reported that it had lost almost 750,000 of its customers' Bitcoins, and around 100,000 of its own Bitcoins worth about $473 million.

13.    Approximately six weeks after filing the Japanese petition for civil rehabilitation, MtGox notified the Tokyo Court that it had determined that (i) it needed to conduct a lengthy investigation into the circumstances that led to the filing, (ii) there was no specific plan to restart its business or sell its assets, and (iii) it would be unable to prepare a rehabilitation plan. *Id.*, ¶ 15. Mr. Kobayashi agreed with MtGox's findings and told the Tokyo Court that it would not be appropriate to grant an order commencing the civil rehabilitation.

14.    On April 16, 2014, the Tokyo Court dismissed the civil rehabilitation petition, ordered administration of MtGox's assets by Mr. Kobayashi, in his capacity as a provisional administrator, and issued restrictions on certain actions by creditors and Mr. Kobayashi in the time between the dismissal of the civil rehabilitation petition and the formal commencement of liquidation proceedings. On April 24, 2014, the Tokyo Court entered an order commencing

6

MtGox's liquidation proceedings and appointed Mr. Kobayashi as MtGox's bankruptcy trustee. *Id.*, ¶ 16.

15. On March 9, 2014, the petitioner of MtGox filed for recognition under chapter 15 of the Bankruptcy Code, and on March 10, 2014, it filed a related motion for provisional relief that was granted that day ("**MtGox Provisional Relief Order**"). On May 23, 2014, the petitioner of MtGox filed an amended verified petition for recognition under Chapter 15. On June 19, 2014, MtGox's Japanese proceeding was granted recognition by the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division ("**MtGox Bankruptcy Court**"). *Id.*, ¶ 17.

16. Concerned about certain litigation in which MtGox was a co-defendant with Tibanne, and as a creditor of Tibanne, on January 29, 2015, MtGox, through its Japanese bankruptcy trustee Mr. Kobayashi, commenced an involuntary proceeding against Tibanne under the Japanese Bankruptcy Act ("**Bankruptcy Act**"). *Id.*, ¶ 18. On January 30, 2015, the Tibanne case was formally commenced by the Japan Proceeding and Petitioner was appointed as the bankruptcy trustee for Tibanne pursuant to Article 74 of the Bankruptcy Act. *See* Verified Petition, Ex. A; Awataguchi Declaration, ¶¶ 5, 18. Translated copies of the Decision to Commence Bankruptcy Procedure, Notice of Commencement of Bankruptcy Proceedings, and Certificate of Appointment and Seal of the Bankruptcy Trustee are annexed collectively hereto as **Exhibit A**. As demonstrated by his extensive experience in the insolvency area, Petitioner is duly qualified to serve as a bankruptcy trustee and as the foreign representative. Awataguchi Declaration, ¶¶ 2-5, 7-9. He is also completely independent of Tibanne, MtGox, their affiliates, and any related parties. *Id.*, ¶ 18. All creditors are going to be notified of Tibanne's liquidation proceeding pursuant to the Notice of Commencement of Bankruptcy Proceedings.

7

17. Tibanne has extremely limited liquid assets. *Id.*, ¶ 19. A significant portion of Tibanne's limited liquid assets were used to pay a retainer to its attorneys that is held in a New York account for purposes of filing this request for recognition and provisional relief. Tibanne therefore cannot afford to retain attorneys or other professionals necessary to defend or pursue actions or claims in the United States.

C.  **Petitioner's Activities Based in Japan**

18. Tibanne has always had a registered office in Japan. Its principal place of business has always been in Japan. Tibanne's customers, investors, and creditors all understand Tibanne to be a Japanese corporation located in Japan. *Id.*, ¶ 20. Tibanne's website described the corporation as "a Tokyo, Japan-based corporation founded in 2009." The website also described the management as follows: "[o]ur team is comprised of talented Japanese and international staff hailing from many countries, disciplines and specializations." All of Tibanne's employees were and are located in Japan.

19. In addition, almost all of Tibanne's hard assets, including but not limited to computers and servers, are located in Tokyo, Japan. *Id.*, ¶ 21.

20. Moreover, many of Tibanne's known creditors, including those holding the two largest liquidated claims, are located in Japan, most of its customers and its business partners are in Japan, and substantially all of its books and records are in Japan. *Id.*, ¶ 22.

21. Currently, the trustee work of Tibanne is being conducted by Petitioner out of the office of Bingham Sakai Mimura Aizawa-Foreign Law Joint Enterprise, 4th Floor, Hulic Kamiyacho Building, 4-3-13 Toranomon, Minato-ku, Tokyo, Japan. All of Petitioner's (as bankruptcy trustee) communication and liquidation activity are made from that location. *Id.*, ¶ 23.

8

22. On February 2, 2015, the Tokyo Court issued an order granting Petitioner's request for permission to file this Verified Petition and a motion for provisional relief. *Id.*, ¶ 24. A copy of the Order granting Petitioner's Petition of Permission regarding the filing in the United States of America and the Approval of the Estate Claim is attached as **Exhibit A** to the Awataguchi Declaration.

D. **Assets in the United States**

23. Tibanne has an asset in the United States in the form of funds held at TD Bank at 2 Wall Street, New York, NY. *Id.*, ¶ 34. The funds are in the account of the law firm Reid Collins & Tsai LLP, and are held as a retainer. Tibanne also has counterclaims that are described below in conjunction with the Washington Action and Class Action. Further, Tibanne owns certain domain names that may be protected under U.S. trademark laws. Petitioner is still in the process of determining the location of these domain names.[2]

E. **United States Litigation**

24. As mentioned above, the primary reason for this request for recognition of the Japan Proceeding is to obtain a stay of the two actions described below.

25. <u>The Washington Action</u>: On May 2, 2013, Coinlab Inc. ("**Coinlab**") filed a lawsuit in the U.S. District Court for the Western District of Washington ("**Washington Court**") against MtGox and Tibanne, Case No. 13-cv-777-MJP (the "**Washington Action**"). *Id.*, ¶ 36. The complaint in that action, as amended on November 25, 2013, seeks damages for breach of an agreement between Coinlab, on the one hand, and MtGox and Tibanne on the other hand, dated November 22, 2012, concerning Coinlab's provision of bitcoin-related services in the United

---

[2] For example, for the domain name www.bitcoins.com, Petitioner believes that the registrar is 1 API GmbH (a German entity), and the registry (as for all ".com" and ".net" domains) is Verisign, Inc. (located in the state of Virginia).

9

States and Canada (the "**Coinlab Agreement**"). MtGox and Tibanne filed an answer to the complaint on September 10, 2013 ("**Original Answer with Counterclaims**"), along with counterclaims (collectively, the "**Counterclaim**"), and an answer to the Amended Complaint on December 9, 2013. Copies of the Original Complaint, Original Answer with Counterclaims, Amended Complaint and Answer to the Amended Complaint are attached collectively as Exhibit D to the Awataguchi Declaration.

26. Pursuant to the Coinlab Agreement, Coinlab was to become the exclusive provider of Bitcoin exchange services for Tibanne and MtGox in the United States and Canada. *Id.*, ¶ 37. The agreement was effective as of November 22, 2012, and provided a 120-day transition period that expired March 22, 2013, after which Coinlab would begin conducting those exchange services. Coinlab alleged that MtGox and Tibanne breached the Coinlab Agreement by failing to consummate the deal at the expiration of the transition period.

27. However, as set forth more fully in the Counterclaim, the Coinlab Agreement is void and unenforceable and subject to rescission because Coinlab's operation of a Bitcoin exchange in the United States would have violated U.S. federal and state law regulating and requiring licensure to operate Bitcoin exchanges. *Id.*, ¶ 38. The Coinlab Agreement expressly required, and Coinlab warranted, that it would operate the Bitcoin exchange services in compliance with all applicable laws and regulations. However, notwithstanding Coinlab's contentions otherwise, at the expiration of the transition period on March 22, 2014, Coinlab was not yet registered under federal regulations or licensed in any state as a money transmitter, and as of the date of the Counterclaim, had still not been licensed in any state in which it was to conduct a bitcoin exchange business.

10

28. On March 20, 2014, MtGox, joined by Tibanne, filed a motion to stay the entire proceeding based on MtGox's bankruptcy filing, which the Washington Court granted over Coinlab's objection on April 30, 2014. *Id.*, ¶ 39. On July 21, 2014, Coinlab filed a motion to lift the stay and for a temporary restraining order ("**Initial TRO**") enjoining Tibanne from selling certain of its assets while the action was stayed. The Washington Court granted the Initial TRO on July 22, 2014 to expire 14 days later. By order dated August 5, 2014, the Washington Court extended the Initial TRO an additional 14 days. Coinlab filed yet another motion to extend the Initial TRO but subsequently withdrew it. On September 4, 2014, Coinlab filed a motion to lift the stay as against Tibanne, which the Washington Court granted on October 28, 2014. On January 29, 2015, Coinlab again moved for a TRO (the "**Second TRO**", and together with the Initial TRO, the "**TROs**") to prevent Tibanne from dissipating its assets. On that same day, the Washington Court entered an order stating that it would not rule on the motion for the Second TRO without notice to Tibanne, and that Tibanne will have one day from the date of notification to advise the court whether it plans to oppose the motion, and two days from such notification to file its opposition papers. On January 30, 2015, Coinlab filed a declaration stating that it had served Tibanne by Express Mail and via email to Mark Karpeles. The Express Mail receipt filed indicates that the scheduled delivery date of the papers is February 4, 2015. Thus Tibanne must advise the Washington Court whether it plans to oppose the TROs on February 5, 2015 and file its opposition papers by February 6, 2015. On February 3, 2015, upon learning of the Japan Proceeding, the Washington Court entered an Order to Show Cause why the case against Tibanne should not be stayed pending resolution of the Japan Proceeding, and requesting that Coinlab brief the issue on or before February 5, 2015.

11

29. On December 5, 2014, the Washington Court entered an order setting a trial date for July 20, 2015, and various related deadlines, including a discovery cutoff of February 20, 2015, and a March 23, 2015 deadline for dispositive motions. *Id.*, ¶ 40. On December 10, 2014, Tibanne's counsel filed a motion to withdraw as counsel, which the Washington Court granted on January 6, 2015. Pursuant to that order, Tibanne is required to retain new counsel within 30 days—February 5, 2015 ("**Coinlab Deadline**"). Further, if no counsel files a notice of appearance by the Coinlab Deadline, the Washington Court's order directs Coinlab to file a motion for entry of default against Tibanne. This threat of an entry of default has created the urgent need for the relief requested herein and more specifically, in the Application for Provisional Relief.

30. The Class Action: On February 27, 2014, a putative class action suit was commenced in the Northern District of Illinois ("**Illinois Court**") against MtGox, MtGox Inc., Tibanne, and Karpeles, Case No. 14-cv-01437 (the "**Class Action**", and collectively with the Washington Action, the "**U.S. Actions**"). *Id.*, ¶ 41. The complaint was amended on March 14, 2014, as corrected on March 17, 2014, which added as defendants MtGox North America, Mizuho Bank, Ltd ("**Mizuho Bank**"), Gonzague Gay-Bouchery, Jed McCaleb, and certain John Doe defendants. As set forth in the Corrected First Amended Complaint, the Class Action asserts claims on behalf of members of the MtGox website against all of these entities in connection with the alleged disappearance of Bitcoins and fiat currency deposited with MtGox. A copy of the Corrected First Amended Complaint is attached as Exhibit E to the Awataguchi Declaration.

31. On March 4, 2014, the plaintiffs moved for a temporary restraining order and preliminary injunction (the "**Illinois TRO Motion**"), seeking to freeze the assets located in the United States of each of the then-named defendants (MtGox, MtGox Inc., Tibanne, and

12

Karpeles), barring each from transferring Bitcoins or fiat currency from the United States, and related relief. *Id.*, ¶ 42. On March 11, 2014, the day after the MtGox Bankruptcy Court issued the MtGox Provisional Relief Order, the Illinois TRO Motion was granted as against all defendants (other than MtGox due to that order) to expire 14 days later ("**Illinois TRO**"). On March 20, 2014, the Illinois Court extended the Illinois TRO until April 8, 2014, and on April 8, issued an interim preliminary injunction as against all defendants except MtGox, Mizuho Bank, and McCaleb.

32.     On May 8, 2014, the Illinois Court approved a stipulated agreement staying the Class Action as against Tibanne, Karpeles, and Mizuho Bank. *Id.*, ¶ 43. On December 19, 2014, counsel to Tibanne and Karpeles filed a motion to withdraw as counsel, which the court granted on January 8, 2015 (as amended by order dated January 12, 2014). In that same order, the court vacated the stay in effect as against Tibanne, Karpeles, and Mizuho Bank, and marked plaintiffs' motion for a preliminary injunction as withdrawn.

## RELIEF REQUESTED

33.     Petitioner, as the duly organized foreign representative of Tibanne, seeks recognition of the Japan Proceeding as a foreign main proceeding (or alternatively as a foreign nonmain proceeding) pursuant to sections 1504, 1507, 1509, 1515, and 1517, relief as of right under section 1520, and certain additional relief available under sections 108 and 1521.

34.     Specifically, Petitioner seeks entry of an order substantially in the form annexed hereto as **Exhibit B** granting the following relief as necessary to best advance the Japan Proceeding:

- recognizing the Japan Proceeding as a foreign main proceeding as defined in section 1502(4);

13

- granting relief as of right upon recognition of a foreign main proceeding pursuant to sections 108 and 1520 so as to enjoin the U.S. Actions and to protect Tibanne's assets against execution;

- granting additional relief to accomplish the goals set forth above to the extent such stay is necessary;

- in the event that the Japan Proceeding is recognized as a foreign nonmain proceeding as defined in section 1502(5), granting additional relief as authorized by section 1521(a); and

- awarding Petitioner such other and further relief as this Court may deem just and proper.

35.    Petitioner thus seeks recognition of the Japan Proceeding in order to stay the U.S. Actions and any other actions against Tibanne as well as to protect Tibanne's assets.

## BASIS FOR SUCH RELIEF

**A.    Petitioner Has Satisfied the Requirements for Recognition**

36.    As set forth in the accompanying Memorandum of Law, the Japan Proceeding is entitled to recognition under section 1517 of the Bankruptcy Code because:

- the Japan Proceeding is (i) a foreign proceeding within the meaning of section 101(23) of the Bankruptcy Code; (ii) a foreign main proceeding within the meaning of section 1502(4) of the Bankruptcy Code because it is being conducted in the location of Tibanne's COMI; and (iii) in the alternative, a foreign nonmain proceeding because it is pending in a location where Tibanne has an establishment;

- Petitioner is a foreign representative within the meaning of section 101(24) of the Bankruptcy Code; and

- Tibanne's Chapter 15 petition meets the requirements of section 1515 of the Bankruptcy Code.

37.    Recognizing the Japan Proceeding would not be manifestly contrary to the public policy of the United States under section 1506 of the Bankruptcy Code. The Japan Proceeding is collective in nature, judicially supervised, and governed by extensive insolvency laws. *See* Awataguchi Declaration, ¶¶ 25-33 (for further explanation of Japanese bankruptcy law and the

14

claims process). Moreover, granting recognition would further the stated policy goals of Chapter 15 by promoting cooperation between courts, allowing for the fair and efficient administration of cross-border insolvencies, and facilitating the protection and maximization of Tibanne's assets.

38. Indeed, Chapter 15 recognition will enhance and facilitate the ability of Petitioner to fulfill his duties as the bankruptcy trustee of Tibanne in accordance with Japanese insolvency law. By staying the U.S. Actions, the extremely scarce resources of the estate will be preserved and all creditors will be able to pursue their claims in a centralized forum. Recognition will allow such administration to occur in one proceeding so as to prevent a piecemeal disposition or degradation of assets that would undermine the Japan Proceeding and harm Tibanne and its creditors.

39. The following documents are annexed hereto in support of this Verified Petition, as required by section 1515 and Bankruptcy Rules 1007 and 1008:

- pursuant to section 1515(b), a certified copy of the Appointment Order of the Tokyo Court appointing Petitioner as bankruptcy trustee for Tibanne, annexed hereto as **Exhibit A**;

- pursuant to 11 U.S.C. § 1515(c), a statement certifying, among other things, that no other foreign proceeding with respect to Tibanne is known to Petitioner, annexed as **Exhibit C**;

- pursuant to Bankruptcy Rule 1007(a)(4), annexed collectively hereto as **Exhibit D** is:
    - a corporate ownership statement containing the information described in Bankruptcy Rule 7007.1;
    - a list containing the names and addresses of all persons or bodies authorized to administer foreign proceedings of Tibanne; and
    - a list of all known parties to litigation and/or arbitration pending in the United States in which Tibanne is a party at the time of the filing of the Petition.

- pursuant to 28 U.S.C. § 1746, a verification by Petitioner regarding this Verified Petition, annexed hereto as **Exhibit E**.

15

40. Because (i) the Japan Proceeding is a foreign proceeding under section 101(23), (ii) Petitioner is a foreign representative under section 101(24), (iii) Tibanne's COMI unquestionably lies in the Tokyo, Japan, (iv) Petitioner has complied with all requirements of 11 U.S.C. § 1515 and Bankruptcy Rule 1007(a)(4), and (v) recognition of the Japan Proceeding would not be contrary to public policy under 11 U.S.C. § 1506, Petitioner is entitled to entry of an order recognizing the Japan Proceeding as a foreign main proceeding.

41. Alternatively, in the event the Court determines that the Japan Proceeding is not eligible to be recognized as a foreign main proceeding as Petitioner believes it should, the Japan Proceeding should be recognized as a foreign nonmain proceeding as defined in 11 U.S.C. § 1502(5) because, as set forth in the supporting Memorandum of Law, at minimum Tibanne maintains an establishment in Tokyo, Japan where nontransitory economic activity takes place.

42. In addition, Petitioner is entitled to appropriate additional relief under section 1521(a)(1) and (2). These sub-sections provide for an additional stay concerning actions or executions against the debtor's assets "to the extent they have not been stayed under section 1520(a)." Though Petitioner believes all actions should be stayed pursuant to section 1520(a), to the extent foreign law and the law of the United States, read together, create confusion or conflict (such as by the lack of an "estate" in chapter 15 or by application of foreign enforcement law) and thereby limit the application of section 362, Petitioner also seeks additional relief. Thus, in addition to the stay contained in section 1520(a), Petitioner requests relief under section 1521(a)(1) and (2). This should result in the cessation of all of the Plaintiffs' efforts in the U.S. Actions and the elimination of the TROs.

43. Further, such additional relief is requested in the event that this court grants recognition of Tibanne as a foreign nonmain proceeding. While Petitioner believes this is

16

doubtful due to the clear center of main interest in Tokyo, Japan, since the stay contained in section 1520 would not be automatic, it should be granted under section 1521(a).

**B.    Recognition of the Japan Proceeding and the Provisional Relief Requested will Benefit All Creditors**

44.    The Japan Proceeding provides a centralized process to assert and resolve claims against Tibanne, and make distributions to Tibanne's creditors. Relief and recognition are requested to facilitate the administration of the Tibanne estate through a central forum.

45.    Thus, Petitioner now seeks recognition of the Japan Proceeding as a foreign main proceeding in order to gain access to the relief available in Chapter 15, specifically including the automatic stay, for the benefit of all of Tibanne's creditors and investors.

## NO PRIOR REQUEST

46.    No prior motion or application for the relief requested herein has been made to this or any other Court.

## **CONCLUSION**

47. WHEREFORE, Petitioner respectfully requests that this Court enter an order substantially in the form annexed hereto as **Exhibit B** recognizing the Japan Proceeding as a foreign main proceeding, granting additional relief upon recognition and granting such other and further relief as to the Court appears just and proper.

Dated: February 3, 2015
      New York, New York

                                              REID COLLINS & TSAI LLP

                                               /*Angela J. Somers*
                                              Angela J. Somers
                                              R. Adam Swick
                                              Anne M. Bahr
                                              Yonah Jaffe
                                              One Penn Plaza, 49th Floor
                                              New York, New York 10119
                                              Tel.: (212) 344-5200
                                              Fax: (212) 344-5299