**REID COLLINS & TSAI LLP**
Angela J. Somers
R. Adam Swick
Anne M. Bahr
Yonah Jaffe
One Penn Plaza, 49th Floor
New York, New York 10119
Tel.: (212) 344-5200

*Counsel to Taro Awataguchi,*
*Foreign Representative of Tibanne Co., Ltd.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>TIBANNE CO., LTD., a/k/a K.K. Tibanne,<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 15- _____ |

## DECLARATION OF TARO AWATAGUCHI

I, Taro Awataguchi, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my knowledge and belief:

1.      I am the bankruptcy trustee of Tibanne Co., Ltd., a/k/a K.K. Tibanne ("**Tibanne**" or the "**Debtor**"),[1] appointed to oversee the Debtor's foreign proceeding ("**Japan Proceeding**"), as I understand that term to be defined in section 101(23) of title 11 of the United States Code (the "**Bankruptcy Code**"), pending before the Twentieth Civil Division of Tokyo District Court, Japan (the "**Tokyo Court**").

2.      I am a resident of Japan and have been registered to practice law in Japan since 2002. Currently, I am a partner at Bingham Sakai Mimura Aizawa-Foreign Law Joint Enterprise

---

[1] All capitalized terms not expressly defined herein shall have the meaning ascribed to them in the Verified Petition.

("**Bingham**"). My office is located at 4th Floor, Hulic Kamiyacho Building, 4-3-13 Toranomon, Minato-ku, Tokyo, Japan.

3.      I have extensive experience with each of Japan's four types of insolvency proceedings, including: (i) liquidation proceedings under the Bankruptcy Act of Japan (Hasan Ho) (the "**Bankruptcy Act**"); (ii) civil rehabilitation proceedings under Japan's Civil Rehabilitation Act (Minji Saisei Ho); (iii) reorganization proceedings under Japan's Corporate Reorganization Act (Kaisha Kosei Ho), and (iv) special liquidation proceedings (Tokubetsu Seisan). I have served as a bankruptcy trustee in numerous cases and have been practicing as a restructuring professional for more than 12 years

4.      Since becoming an attorney at law, I have been a member of the Tokyo Bar Association and have served on the Committee on Bankruptcy and Creditors' Rights. Further, since 2006, I have authored or co-authored many articles and books on matters regarding bankruptcy and creditors' rights.

5.      On January 30, 2015, the Tokyo Court appointed me as the bankruptcy trustee of Tibanne. Translated copies of the Decision to Commence Bankruptcy Procedure, Notice of Commencement of Bankruptcy Proceedings, and Certificate of Appointment and Seal of the Bankruptcy Trustee are annexed collectively as Exhibit A to the Verified Petition and are true and accurate copies of the orders issued by the Tokyo Court. As such, I am fully familiar with Japanese insolvency law and with Tibanne's Japan Proceeding (as described below).

6.      As set forth in Article 1 of the Bankruptcy Act, the purpose of a Japanese bankruptcy proceeding under the Bankruptcy Act is to appropriately coordinate the interests of creditors and other interested persons with the aim of ensuring a proper and fair liquidation of the debtor's property.

7.     Pursuant to Article 75 of the Bankruptcy Act, as the appointed bankruptcy trustee of Tibanne, I am under the supervision of the Tokyo Court. In addition, I have received permission from the Tokyo Court to bring this application. A true and correct copy of the Order by the Tokyo Court granting permission to file a chapter 15 case and a motion for provisional relief is attached hereto as **Exhibit A**.  It is in this capacity that I therefore make this declaration ("**Declaration**") requesting an extension of comity for the benefit of all of Tibanne's creditors, whose interests I represent.

8.     I hereby submit this declaration in support of the Verified Petition Seeking Recognition of the Japan Proceeding as a Foreign Main Proceeding Pursuant to 11 U.S.C. § 1517 (the "**Verified Petition**") and in support of the Application for Provisional Relief.

9.     This Declaration is based upon my (i) personal knowledge, (ii) review of Tibanne's books and records, (iii) review of the Mt.Gox Co., Ltd. a/k/a K.K. MtGox bankruptcy filings in Japan and the United States, (iv) review of the pleadings in the Washington Action and Class Action, (v) communications and dealings with Tibanne's former director, and (vi) other work performed to date.

**A.     Tibanne's Corporate Status and Structure**

10.     Tibanne was established in October 29, 2009 as a corporation organized under Japanese Law. A copy of Tibanne's Certificate of Company Registration is attached hereto as **Exhibit B**.  Tibanne has always had its registered office in Tokyo, Japan. From October 29, 2009 to June 24, 2012, its registered office was located at Cerulean Tower 15F, 26-1 Sakuragaoka-cho, Shibuya-ku, Tokyo, Japan. From June 25, 2012 to September 1, 2013, its registered office was located at Round-Cross 5F, 2-11-6 Shibuya, Shibuya-ku, Tokyo, Japan. From September 1, 2013 to January 16, 2015, Tibanne's registered office was located at 2-11-5

Shibuya, Shibuya-Ku, Tokyo, Japan. For most of its existence, Tibanne's registered office was also its principal place of business where it maintained its books and records and conducted its business. However, from January 16, 2015 to the time I was appointed as bankruptcy trustee, Tibanne's principal place of business was the home of Mark Karpeles in Tokyo, Japan because Tibanne was unable to pay the rent on its former offices. In its documents, and communications to customers, investors, and creditors, Tibanne has consistently represented that it is a Japanese corporation subject to Japanese law.

11.    Tibanne is solely owned by Mark Marie Robert Karpeles who resides in Japan. Tibanne is the parent corporation of Mt.Gox Co., Ltd. a/k/a K.K. MtGox ("**MtGox**"). Tibanne holds an 88% equity interest in MtGox, with the other 12% held by Jed McCaleb, the developer of the initial MtGox software. In turn, MtGox is the parent corporation for and holds 100% of the equity interest in Mt. Gox North America Inc. ("**MtGox North America**"), a New York corporation. Moreover, MtGox North America is the parent corporation for and holds 100% of the equity interest in MtGox Inc. ("**MtGox Inc.**"), a Delaware corporation.

12.    Tibanne specialized in web hosting, application development, and system management. Currently, Tibanne still engages in web hosting, but it is winding down that business.  As a web host, Tibanne enabled individuals and organizations to make their websites accessible via the internet.  Specifically, they provided space on their servers and internet connectivity to a variety of businesses.  Tibanne offered this web hosting services to numerous companies, including commercial retailers. As a result of Tibanne's web hosting, customers of these commercial retailers could place orders and make purchases twenty-four hours a day, seven days a week via the internet.

13.     In addition, on March 1, 2011, Tibanne purchased the mtgox.com website, domain name rights, software, and customer accounts from Jeb McCaleb.[2] On August 9, 2011, MtGox was formed as a separate corporation and subsidiary of Tibanne, for the purpose of constructing, developing, and operating information technology systems and internet websites. As of April 1, 2012, MtGox commenced operating the mtgox.com website. The mtgox.com website facilitated the buying and selling of Bitcoins for "fiat" currency, and had customers throughout the world.

## B.    Events Leading to the Japan Proceeding

14.     Because of Tibanne's reliance on revenue produced by MtGox, as MtGox encountered problems, it could no longer generate cash flow to be used for Tibanne's operations. On February 28, 2014, MtGox filed a petition for commencement of a civil rehabilitation proceeding in the Tokyo Court pursuant to Article 21(1) of the Japan's Civil Rehabilitation Act. On that same day, the Tokyo Court appointed Nobuaki Kobayashi as MtGox's provisional administrator. According to the pleadings filed, on February 7, 2014, MtGox halted all bitcoin withdrawals by its customers after MtGox was subject to what appears to have been a massive theft or disappearance of Bitcoins. As a result, MtGox suspended all trading of Bitcoins on or about February 24, 2014. MtGox reported that it had lost almost 750,000 of its customers' Bitcoins, and around 100,000 of its own Bitcoins worth about $473 million.

15.     Approximately six weeks after filing the Japanese petition for civil rehabilitation, MtGox notified the Tokyo Court that it had determined that (i) it needed to conduct a lengthy investigation into the circumstances that led to the filing, (ii) there was no specific plan to restart its business or sell its assets, and (iii) it would be unable to prepare a rehabilitation plan. Mr.

---

[2] Jed McCaleb created the mtgox.com website in approximately 2007 for other purposes not related to Bitcoin. Subsequently, he developed the software and website to become a Bitcoin exchange in 2010.

5

Kobayashi agreed with MtGox's findings and told the Tokyo Court that it would not be appropriate to grant an order commencing the civil rehabilitation.

16.     On April 16, 2014, the Tokyo Court dismissed the civil rehabilitation petition, ordered administration of MtGox's assets by Mr. Kobayashi in his capacity as a provisional administrator, and issued restrictions on certain actions by creditors and Mr. Kobayashi in the time between the dismissal of the civil rehabilitation petition and the formal commencement of liquidation proceedings. On April 24, 2014, the Tokyo Court entered an order commencing MtGox's liquidation proceedings and appointed Mr. Kobayashi as MtGox's bankruptcy trustee.

17.     On March 9, 2014, MtGox filed for recognition under chapter 15 of the Bankruptcy Code, and on March 10, 2014, it filed a related motion for provisional relief that was granted that day ("**MtGox Provisional Relief Order**"). On May 23, 2014, MtGox filed an amended verified petition for recognition under Chapter 15. On June 19, 2014, MtGox's Japanese proceeding was granted recognition by the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division ("**MtGox Bankruptcy Court**").

18.     Concerned about certain litigation in which MtGox was a co-defendant with Tibanne, and as a creditor of Tibanne, on January 29, 2015, MtGox, through its Japanese bankruptcy trustee Mr. Kobayashi, filed for commencement of an involuntary proceeding against Tibanne under the Japanese Bankruptcy Act. On January 30, 2015, the Tibanne case was formally commenced by the Japan Proceeding and I was appointed as bankruptcy trustee pursuant to Article 74 of the Bankruptcy Act.  All of my actions are, and will be, taken completely independent of Tibanne, MtGox, their affiliates, and any related parties.  All creditors are going to be notified of Tibanne's liquidation proceeding pursuant to the Notice of Commencement of Bankruptcy Proceedings.

19.     Tibanne has extremely limited liquid assets at this time. A significant portion of Tibanne's limited liquid assets were used to pay a retainer to its attorneys that is held in a New York account for purposes of filing this request for recognition and provisional relief. Tibanne therefore cannot afford to retain attorneys or other professionals necessary to defend or pursue actions or claims in United States.

**C.      Tibanne's Activities Based in Japan**

20.     Tibanne has always had a registered office in Japan.  Its principal place of business has always been in Japan.  Tibanne's customers, investors, and creditors understand Tibanne to be a Japanese corporation located in Japan. Tibanne's website described the corporation as "a Tokyo, Japan-based corporation founded in 2009."  The website also described the management as follows: "[o]ur team is comprised of talented Japanese and international staff hailing from many countries, disciplines and specializations."  All of Tibanne's employees were and are located in Japan.

21.     In addition, almost all of Tibanne's hard assets, including but not limited to computers and servers, are located in Tokyo, Japan.

22.     Moreover, many of Tibanne's known creditors, including those holding the two largest liquidated claims, are located in Japan, most of its customers and its business partners are in Japan, and substantially all of its books and records are in Japan.

23.     Currently, I am conducting the trustee work of Tibanne out of my office at Bingham, located at 4th Floor, Hulic Kamiyacho Building, 4-3-13 Toranomon, Minato-ku, Tokyo, Japan. All of my communication and liquidation activity are made from that location.

24.     On February 2, 2015, the Tokyo Court issued an order granting my request for permission to file the Verified Petition and Application for Provisional Relief.

D.      **Japanese Bankruptcy Law**

25.      Under Japanese law, there are four types of insolvency proceedings: (i) corporate reorganization, (ii) civil rehabilitation, (iii) special liquidation, and (iv) bankruptcy for liquidation.  Here, Tibanne has been placed into bankruptcy by its largest creditor, MtGox, and is subject to the Bankruptcy Act.  A copy of the Bankruptcy Act is attached hereto as **Exhibit C**.

26.      As noted above, the purpose of a Japanese bankruptcy proceeding under the Bankruptcy Act is to appropriately coordinate the interests of creditors and other interested persons with the aim of ensuring a proper and fair liquidation of the debtor's property.

27.       A creditor may initiate an involuntary bankruptcy proceeding against a debtor by filing a petition with a Japanese District Court,[3] as has happened in this case.  Under Japanese law, the filing of the petition itself does not cause an automatic stay to be imposed. Shortly after the petition is filed, the District Court examines the grounds for bankruptcy and if satisfied, issues a commencement order.  In the commencement order, the District Court appoints the bankruptcy trustee and sets the period for filing proofs of claim.  Assets belonging to the debtor at the time of the commencement order constitute a bankruptcy estate, whether located inside or outside of Japan. In addition, upon the issuance of a commencement order, all attempts to satisfy or secure or somehow improve the position of pre-commencement order claims are stayed. Following its issuance, the commencement order is published by public notice and mailed to each creditor.

28.      Once appointed, a bankruptcy trustee has the sole right to administer and dispose of estate property. However, as provided in Article 75 of the Bankruptcy Act, the bankruptcy trustee is subject to supervision by the District Court.  Following commencement and within the time period set forth by the District Court, creditors are required to file proofs of their claim.

---

[3] There are no separate bankruptcy courts in Japan so the petition is filed with the District Court.

29.    After the commencement order, the bankruptcy trustee will hold the creditors meeting at which he or she will report (i) the causes for, and background of, the bankruptcy, (ii) the past and present status of the debtor and the estate, and (iii) any other matter deemed appropriate by the bankruptcy trustee.  On the day of the creditors meeting, the bankruptcy trustee will also hold a claim examination hearing.  At that hearing, the bankruptcy trustee will admit or object to each claim.  Creditors may also object to other creditor's claims.  If the claimant disagrees with any of the objections, it can seek a fast track examination procedure by the District Court.

30.    Moreover, following the issuance of the commencement order, the bankruptcy trustee will also gather the debtor's assets and liquidate those assets into cash.

31.    When the assets of the estate have been liquidated into an appropriate amount of cash, distributions are made to claim holders in accordance with the priority scheme provided for in the Bankruptcy Act.  Article 194(2) of the Bankruptcy Act further provides that distributions with regard to bankruptcy claims will be made on a pro rata basis in proportion to the amount of the respective claims.

32.    A secured creditor is excluded from distribution unless it can prove that it received a deficient recovery after foreclosure; however, a secured creditor may seek to foreclose on assets without violating the stay imposed at the time of the commencement order.

33.    Following the final distribution and a creditors meeting to report the accounts,[4] upon petition by the bankruptcy trustee or on the court's own authority, a termination order will be issued. A bankruptcy proceeding may also be terminated if all filed creditors agree to the termination or if the value of the estate is smaller than the amount of administrative expenses.

---

[4] The creditors meeting may be substituted with a written report.

### E.    Assets in the United States

34.    Tibanne has an asset in the United States in the form of funds held at TD Bank at 2 Wall Street, New York, NY. The funds are in the account of the law firm Reid Collins & Tsai LLP, and are held as a retainer. Tibanne also has counterclaims that are described below in conjunction with the Washington Action and Class Action. Further, Tibanne owns certain domain names that may be protected under U.S. trademark laws. Petitioner is still in the process of determining the location of these domain names.[5]

### F.    United States Litigation

35.    As mentioned above, the primary reason for this request for recognition of the Japan Proceeding is to obtain a stay of the two actions described below.

36.    <u>The Washington Action</u>: On May 2, 2013, Coinlab Inc. ("**Coinlab**") filed a lawsuit in the U.S. District Court for the Western District of Washington ("**Washington Court**") against MtGox and Tibanne, Case No. 13-cv-777-MJP (the "**Washington Action**"). The complaint in that action, as amended on November 25, 2013, seeks damages for breach of an agreement between Coinlab, on the one hand, and MtGox and Tibanne on the other hand, dated November 22, 2012, concerning Coinlab's provision of bitcoin-related services in the United States and Canada (the "**Coinlab Agreement**"). MtGox and Tibanne filed an answer to the complaint on September 10, 2013 ("**Original Answer with Counterclaims**"), along with counterclaims (collectively, the "**Counterclaim**"), and an answer to the Amended Complaint on December 9, 2013.  Copies of the Original Complaint, Original Answer with Counterclaims, Amended Complaint and Answer to the Amended Complaint are attached collectively hereto as **Exhibit D**.

---

[5] For example, for the domain name www.bitcoins.com, Petitioner believes that the registrar is 1 API GmbH (a German entity), and the registry (as for all ".com" and ".net" domains) is Verisign, Inc. (located in the state of Virginia).

37.     Pursuant to the Coinlab Agreement, Coinlab was to become the exclusive provider of Bitcoin exchange services for Tibanne and MtGox in the United States and Canada. The agreement was effective as of November 22, 2012, and provided a 120-day transition period that expired March 22, 2013, after which Coinlab would begin conducting those exchange services. Coinlab alleged that MtGox and Tibanne breached the Coinlab Agreement by failing to consummate the deal at the expiration of the transition period.

38.     However, as set forth more fully in the Counterclaim, the Coinlab Agreement is void and unenforceable and subject to rescission because Coinlab's operation of a Bitcoin exchange in the United States would have violated U.S. federal and state law regulating and requiring licensure to operate Bitcoin exchanges. The Coinlab Agreement expressly required, and Coinlab warranted, that it would operate the Bitcoin exchange services in compliance with all applicable laws and regulations. However, notwithstanding Coinlab's contentions otherwise, at the expiration of the transition period on March 22, 2014, Coinlab was not yet registered under federal regulations or licensed in any state as a money transmitter, and as of the date of the Counterclaim, had still not been licensed in any state in which it was to conduct a bitcoin exchange business.

39.     On March 20, 2014, MtGox, joined by Tibanne, filed a motion to stay the entire proceeding based on MtGox's bankruptcy filing, which the Washington Court granted over Coinlab's objection on April 30, 2014. On July 21, 2014, Coinlab filed a motion to lift the stay and for a temporary restraining order (the "**Initial TRO**") enjoining Tibanne from selling certain of its assets while the action was stayed. The Washington Court granted the Initial TRO on July 22, 2014 to expire 14 days later. By order dated August 5, 2014, the Washington Court extended the Initial TRO an additional 14 days. Coinlab filed yet another motion to extend the Initial TRO

but subsequently withdrew it. On September 4, 2014, Coinlab filed a motion to lift the stay as against Tibanne, which the Washington Court granted on October 28, 2014. On January 29, 2015, Coinlab again moved for a TRO (the "**Second TRO**", and together with the Initial TRO, the "**TROs**") to prevent Tibanne from dissipating its assets. On that same day, the Washington Court entered an order stating that it would not rule on the motion for the Second TRO without notice to Tibanne, and that Tibanne will have one day from the date of notification to advise the court whether it plans to oppose the motion, and two days from such notification to file its opposition papers. On January 30, 2015, Coinlab filed a declaration stating that it had served Tibanne by Express Mail and via email to Mark Karpeles. The Express Mail receipt filed indicates that the scheduled delivery date of the papers is February 4, 2015.  Thus Tibanne must advise the Washington Court whether it plans to oppose the TROs on February 5, 2015 and file its opposition papers by February 6, 2015. On February 3, 2015, upon learning of the Japan Proceeding, the Washington Court entered an Order to Show Cause why the case against Tibanne should not be stayed pending resolution of the Japan Proceeding, and requesting that Coinlab brief the issue on or before February 5, 2015.

40.    On December 5, 2014, the Washington Court entered an order setting a trial date for July 20, 2015, and various related deadlines, including a discovery cutoff of February 20, 2015, and a March 23, 2015 deadline for dispositive motions. On December 10, 2014, Tibanne's counsel filed a motion to withdraw as counsel, which the Washington Court granted on January 6, 2015. Pursuant to that order, Tibanne is required to retain new counsel within 30 days— February 5, 2015 ("**Coinlab Deadline**"). Further, if no counsel files a notice of appearance by the Coinlab Deadline, the Washington Court's order directs Coinlab to file a motion for entry of

default against Tibanne. This threat of an entry of default has created the urgent need for the relief requested and, more specifically, in the Application for Provisional Relief.

41.     <u>The Class Action</u>:     On February 27, 2014, a putative class action suit was commenced in the Northern District of Illinois ("**Illinois Court**") against MtGox, MtGox Inc., Tibanne, and Karpeles, Case No. 14-cv-01437 (the "**Class Action**", and collectively with the Washington Action, the "**U.S. Actions**"). The complaint was amended on March 14, 2014, as corrected on March 17, 2014, which added as defendants MtGox North America, Mizuho Bank, Ltd ("**Mizuho Bank**"), Gonzague Gay-Bouchery, Jed McCaleb, and certain John Doe defendants. As set forth in the Corrected First Amended Complaint, the Class Action asserts claims on behalf of members of the MtGox website against all of these entities in connection with the alleged disappearance of Bitcoins and fiat currency deposited with MtGox.  A copy of the Corrected First Amended Complaint is attached hereto as **Exhibit E**.

42.     On March 4, 2014, the plaintiffs moved for a temporary restraining order and preliminary injunction (the "**Illinois TRO Motion**"), seeking to freeze the assets located in the United States of each of the then-named defendants (MtGox, MtGox Inc., Tibanne, and Karpeles), barring each from transferring Bitcoins or fiat currency from the United States, and related relief. On March 11, 2014, the day after the MtGox Bankruptcy Court issued the MtGox Provisional Relief Order, the Illinois TRO Motion was granted as against all defendants (other than MtGox due to that order) to expire 14 days later ("**Illinois TRO**"). On March 20, 2014, the Illinois Court extended the Illinois TRO until April 8, 2014, and on April 8, issued an interim preliminary injunction as against all defendants except MtGox, Mizuho Bank, and McCaleb.

43.     On May 8, 2014, the Illinois Court approved a stipulated agreement staying the Class Action as against Tibanne, Karpeles, and Mizuho Bank. On December 19, 2014, counsel to

Tibanne and Karpeles filed a motion to withdraw as counsel, which the court granted on January 8, 2015 (as amended by order dated January 12, 2014). In that same order, the court vacated the stay in effect as against Tibanne, Karpeles, and Mizuho Bank, and marked plaintiffs' motion for a preliminary injunction as withdrawn.

## G.    The Need for Recognition

44.    The Japan Proceeding provides a centralized process to assert and resolve claims in Tibanne's estate and to make distributions to Tibanne's creditors. Relief and recognition are requested to protect Tibanne's assets and maintain, as well as maximize, value for Tibanne's creditors. Central administration of these assets is critical to any meaningful realization of their value.

45.    I believe that recognition of the Japan Proceeding as a "foreign main proceeding" will enhance and facilitate my ability to fulfill my duties as Tibanne's bankruptcy trustee to realize and distribute the assets of Tibanne in a fair and orderly manner, in accordance with Japanese insolvency laws. Specifically, foreign main recognition under chapter 15 will advance my efforts by, among other things: (i) staying the Washington Action and Class Action against Tibanne pursuant to the automatic stay of section 362 of the Bankruptcy Code, as made applicable by section 1520(a)(1) of the Bankruptcy Code; (ii) providing protection of the assets and recoveries in the United States that I may realize for creditors, including but not limited to the sale of the domain names; and (iii) providing a means to ensure that assets and recoveries in the United States will be distributed in an orderly and equitable fashion through the Japan Proceeding in accordance with the Bankruptcy Act. I also seek additional relief to accomplish the goals set forth above to the extent such stay is necessary.

46.     In addition, and as set forth more fully in the Application for Provisional Relief, I submit that the requested provisional relief is urgently needed to maintain the *status quo*. In particular, a stay of the Washington Action and Class Action pending a decision on recognition is required to prevent the plaintiffs in those actions from proceeding against Tibanne and wasting Tibanne's extremely limited resources. If Tibanne is forced to expend the little cash it has to defend the Washington Action and the Class Action, it is likely that no resources will be left for creditors. In addition, without provisional relief, the Washington Action plaintiff may obtain a default judgment and attempt to seize Tibanne's remaining U.S. assets for its own benefit to the detriment of other similarly situated creditors. If the Washington Action and Class Action plaintiffs are permitted to proceed with their litigation and Tibanne remains financially unable to defend these action, it will jeopardize and destroy the equitable distribution of assets in the Japan Proceeding.

WHEREFORE, I respectfully request that this Court enter orders (i) recognizing the Japan Proceeding as a foreign main proceeding and granting additional relief upon recognition; (ii) immediately providing provisional relief in accordance with the Application for Provisional Relief; and (iii) granting such other and further relief as is just and proper.

Executed this 3rd day of February, 2015.

*/s/ Taro Awataguchi*
Taro Awataguchi